24 N.J. Super. 1 (1952)
93 A.2d 402
THE HACKENSACK TRUST COMPANY, AS TESTAMENTARY TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF H. MYERS BOGERT, DECEASED, PLAINTIFF-APPELLANT,
v.
CHARLOTTE G. BOGERT, INDIVIDUALLY AND AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF HENRY MYERS BOGERT, 2ND, DECEASED, DEFENDANT-RESPONDENT, CHRISTINE B. ALLEY, ROGER BLACKSTONE ALLEY, AND ROGER BLACKSTONE ALLEY, JR., DEFENDANTS-APPELLANTS, HACKENSACK HOSPITAL ASSOCIATION, A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1952.
Decided December 17, 1952.
*3 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. James A. Major argued the cause for plaintiff-appellant (Messrs. Wurts & Plympton, attorneys).
Mr. Horace F. Banta argued the cause for defendant-respondent Charlotte G. Bogert (Messrs. Winne & Banta, attorneys).
Mr. John W. Griggs argued the cause for defendants-appellants (Messrs. Morrison, Lloyd & Griggs, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
The parties here sought a construction of the will of H. Myers Bogert in several particulars. The determination of the matter by the trial court was accepted by them except for one aspect thereof which is made the subject of this appeal. In addition, the corporate executor appeals from the counsel fee allowed to its attorneys.
*4 H. Myers Bogert died testate on March 5, 1932. At the time of death it is undisputed that his two grandchildren, Christine Z. Bogert (now Alley) and Henry Myers Bogert, 2nd, were his only next of kin. Christine Bogert Alley is still alive; Henry Myers Bogert, 2nd, died testate on June 19, 1951, without issue, leaving his widow, Charlotte G. Bogert, surviving.
The eighth paragraph of the will in question disposed of the residuary estate by the creation of a certain trust. Except for the counsel fee issue the proper interpretation of that paragraph presents the sole problem before us. Specifically it provides, so far as pertinent, as follows:
"Eighth: All the rest, residue and remainder of my estate, real, personal or mixed, of which I may die seized, or to which I may be in any manner entitled, I give, devise and bequeath to my Trustee hereinafter named and to its successor or successors in trust, to divide my said estate into two equal parts or shares and to hold each of said equal parts or shares in trust as hereinafter provided, to wit:

* * * * * * * *
(b) To hold the other said equal part or share and invest and reinvest the same, or the proceeds thereof (except as hereinafter provided) during the natural life of my grandson, Henry Myers Bogert, 2nd, and to collect the income and profits therefrom and pay the same to my said grandson quarterly during his life. Upon his death, I give and bequeath one-half of the principal of said part or share to such person or persons as he may by his Last Will and Testament appoint and designate, and the remaining one-half, or in case of his failure to make such appointment and designation as aforesaid, all of such part or share then remaining, in equal shares to the children of my said grandson; in case any of my said grandson's children shall predecease him leaving issue, such issue shall take the same share which such child would have received if such child had survived. At any time after my said grandson arrives at the age of thirty years, my Trustee hereinafter named, or its successor or successors shall, upon the written request of my said grandson, pay over to him a sum or sums out of the principal of said part or share not exceeding in the aggregate fifty per cent. of the principal of said part or share. In case of any such payment or payments, the receipt of my grandson shall absolutely acquit and discharge such Trustee from all liability therefor."
Clause (a) of this paragraph made precisely the same disposition in favor of the granddaughter, Christine Z. Bogert *5 Alley, except that the above italicized words "except as hereinafter provided" and "then remaining" were omitted, and except that no power to invade the corpus was given to her.
In his lifetime Henry Myers Bogert, 2nd, exercised his power to invade the corpus of the trust to the extent of 50% of the principal of his trust. By his will he appointed the "trust fund, or the part or share remaining" at his death to his wife.
The issues we are called upon to decide arise out of the invasion of the corpus and because of the death of Bogert, 2nd, without issue. Specifically the questions are:
(1) Since the corpus of his trust was invaded to the extent of one-half thereof, how much of the remainder passed to his wife by virtue of the testamentary appointment?
(2) If only a part of the remainder of the trust after the invasion passed by the appointment, what is the proper disposition of the other part?
The trial court concluded that under the terms of paragraph 8(b) of the will Bogert, 2nd, had both the power of invasion of the corpus to the extent of one-half thereof and the power of appointment of the other half, even though the exercise of the power in both respects exhausted the fund and left nothing to pass under the explicit direction that upon the death of Bogert, 2nd, "I give * * * the remaining one-half" of the fund "or in case of his failure to make such appointment and designation * * *, all of such part or share then remaining, in equal shares to the children of my said grandson * * *."
After the invasion of the corpus the one-half remaining amounted to $45,393.42. This full sum was directed to be paid to Charlotte G. Bogert, the widow, by reason of her deceased husband's exercise of the power of appointment. In our judgment this was error.
Under paragraph 8(b) the trustee was directed to hold the one-half share of the residuary estate, except so much thereof as might be taken by Bogert, 2nd, by invasion during his lifetime. Then upon his death "one-half of the principal *6 of said part or share" might be disposed of by his testamentary designation. The scope of the word "principal" here must be determined in the light of the duty of the trustee to hold the fund "except as hereinafter provided," which qualification is not contained in the trust of the granddaughter, Christine Z. Bogert Alley. Thus, to give reason and logic to the testamentary intention, it must be concluded that the deceased had in mind that the fund might be diminished by invasion during his grandson's lifetime, in which event the principal, upon the death of the grandson, would represent the original fund less the authorized withdrawals.
This view is strengthened by the use of the words "then remaining" in connection with the gift over to the grandson's children in the event of his failure to exercise the power of appointment over one-half of the principal. It is noted, as set forth above, that the language of the two trusts, grandson's and granddaughter's, in dealing with the gift over upon the death of each is exactly the same except for those words. Manifestly the insertion of "then remaining" came from an awareness of possible diminution of the principal through the means he had authorized.
So we take the view that the principal of the fund for disposition upon the death of Bogert, 2nd, means the uninvaded balance remaining when that event occurred. This interpretation gives effect to the express provision of the testator for a gift over to children of his grandson.
The primary duty of the courts is to give effect wherever possible to every testamentary intention of a deceased. In a choice between two possible constructions of language used in the will, and even though both appear to be reasonable, the interpretation should be chosen which more fully effectuates the intention.
In the situation before us, to adopt the interpretation of the trial court that the remaining half of the trust fund passed under the power of appointment, is to extinguish the gift over to the grandson's children. This frustrates rather *7 than accomplishes the intention. The fact that Bogert, 2nd, left no children does not alter the legal significance of the will. On the other hand, the view that Bogert, Sr. contemplated an equal division of the balance in the fund between his grandson's appointee and children gives purpose to all of the language he employed.
Under the circumstances only one-half of $45,393.42, the remainder in the trust, passed by the testamentary appointment of Bogert, 2nd. The other half would have gone to the children of Bogert, 2nd, if he left any surviving.
Since Bogert, 2nd, left no children the problem arises as to the disposition of the remaining $22,696.71. Did Bogert, Sr. die intestate as to it or did it pass under some other clause in his will? If the will clearly demonstrates that failure of children of the grandson was a contingency neither contemplated nor provided for, then the fund passes by intestacy to those persons who would have been his next of kin at the time of his death. Brown v. Fidelity Union Trust Co., 126 N.J. Eq. 406, 417 (Ch. 1939); Westfield Trust Co. v. Beekman, 97 N.J. Eq. 140, 148 (Ch. 1925); In the Matter of Estate of Buzby, 94 N.J. Eq. 151 (E. & A. 1922); Camden Safe Deposit & Trust Co. v. Guerin, 89 N.J. Eq. 556, 559 (E. & A. 1918); Stout v. Cook, 79 N.J. Eq. 573, 579 (E. & A. 1911); Tuttle v. Woolworth, 62 N.J. Eq. 532 (Ch. 1901); Smith v. Smith, 54 N.J. Eq. 1, 8 (Ch. 1895); Skellenger's Ex'rs. v. Skellenger, 32 N.J. Eq. 659, 662 (Ch. 1880); 3 Page on Wills, sec. 1333. In this event Christine Bogert Alley and Henry Myers Bogert, 2nd, the grandchildren conceded to be the only next of kin, each would be deemed to have had a vested interest in one-half of the $22,696.71 subject to being divested if Myers, 2nd, had a child or children. However, since he had no children, his vested interest in the one-half would have passed under his will to his widow, who is the sole beneficiary named therein.
The law abhors intestacy and presumes against it. Barrett v. Barrett, 134 N.J. Eq. 138 (Ch. 1943). A testator is presumed to have intended the disposition of his *8 entire estate for the benefit of the beneficiaries named in his will. Patanska v. Kuznia, 102 N.J. Eq. 408 (Ch. 1928), affirmed on opinion below 104 N.J. Eq. 204 (E. & A. 1929). In the pursuit of this policy the courts seek the intention of the testator from a study of the will as a whole, and if from all of its provisions and clauses a desire to dispose of all of his assets can be found, an effort will be made to effectuate that purpose. And in doing so the power exists to depart from the strict wording of the will, to mold or change its language, such as, by rejecting superfluous, absurd or repugnant words or phrases or restricting them in their application. Barrett v. Barrett, supra.
In recognition of these principles the trial court found a clear intention to dispose of the entire estate in favor of the beneficiaries named in the will. And to give effect to that purpose he excised certain words therefrom. With that action we agree.
The will is a fairly lengthy and elaborately drawn one. It contains three trusts in addition to the one involved in this action. In each case the principal is directed to pass to the residuary estate upon the death of the life tenant. The trust before us is of the residuary estate and paragraphs 9 and 10 evince a manifest intention to provide for the contingency which has arisen here, namely, failure of children in his grandson. However, in paragraph 10 the inclusion of the words "before me" in the context to be discussed appear to stand in the way of the execution of that intention.
In paragraph 9 Bogert, Sr. provided that if either of his grandchildren predeceased him leaving a child or children, the parent's share of the residuary trust should go to such child or children.
Paragraph 10 provides:
"TENTH: In case of the death of either of my said grandchildren before me without leaving child or children or issue thereof surviving, the part or share hereinbefore directed to be held for the benefit of such grandchild, or the portion thereof not disposed of by such grandchild in the manner hereinbefore provided, shall be added *9 to and become a part of the part or share directed to be held for the surviving grandchild, his or her child, children or issue. In case both of my said grandchildren should die without either leaving a child or children or issue them surviving, then and in that case, I give, devise and bequeath all of the residue and remainder of my said estate, except such part thereof as may have been disposed of under the power of appointment herein given to my said grandchildren, to the Hackensack Hospital Association, * * *."
At superficial examination of this paragraph and paragraph 9 the addition of "before me," would appear to have provided for the following contingencies:
(1) death of either grandchild before him leaving a child or children.
(2) death of either grandchild before him leaving no child or children.
(3) death of both grandchildren, either before or after him, leaving no child or children.
And he would seem to have overlooked the contingency which did occur, that is, death of his grandson, after him, leaving no children.
In ordinary circumstances this would spell out intestacy. However, the language of paragraph 10 patently prevents such a result because "before me" is so repugnant to the general testamentary disposition, and particularly to the clause which immediately follows the clause containing those words, as to demonstrate beyond doubt that their use was inadvertent, mistaken, and not intended. The critical clause, as italicized above, is: "or the portion thereof not disposed of by such grandchild in the manner hereinbefore provided." By this language the testator said that if either one of the grandchildren died without children and did not dispose of his or her portion of the residuary trust by testamentary appointment, then such share should be added to the share of the survivor.
Manifestly, in order to give any significance at all to this clause the grandchild had to survive the testator and he must have had that in mind. With the words "before me" undisturbed the intention to take care of the trust in the *10 event of failure of appointment by a grandchild is defeated. But with their excision the entire instrument has vitality, all of the testator's purposes are accomplished and the policy of the law is fulfilled.
Therefore, the one-half portion in question as directed in paragraph 10 must be added to the trust of the granddaughter, Christine Bogert Alley.
Accordingly the judgment of the Chancery Division is affirmed except as modified hereby.
The second appeal involves the complaint of the corporate trustee that the counsel fee allowance was inadequate.
The record discloses that the trustee was neutral in the proceeding. Although it filed a substantial brief, the real contending parties were Christine Bogert Alley and Charlotte G. Bogert. It appears also that counsel had received $1,500 previously which it is conceded "should be taken into consideration in fixing our fee here." An additional $1,250 was allowed which in our judgment represents fair compensation.
The trustee's appeal is dismissed.