

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

September 11, 1969

Hon. Jesse James
State Treasurer
Treasury Department
State of Texas
Austin, Texas   78711

Opinion No. M-468

Re: Construction of House
Bill 1217, Acts of the
61st Legislature,
Regular Session, 1969,
Chapter 885, Page 2703
relating to depositing
interest on various
funds

Dear Mr. James:

Your request for an opinion reads in part
as follows:

"Please advise this office by official
opinion whether depository interest earned by
this office on the following listed special
funds should be deposited to the General
Revenue Fund as directed by the provisions of
Article 2543d, Texas Revised Civil Statutes.

The funds in question are as follows:

| FUND NO. | FUND NAME OR TITLE |
|---|---|
| 21 | Trust Account, Federal Aid Highway Act |
| 26 | Unemployment Compensation Adm. |
| 28 | Federal Old Age Assistance |
| 30 | Education Agency Driver Fund |
| 37 | Federal Child Welfare Service |
| 92 | Federal Disaster |

-2330-

| FUND NO. | FUND NAME OR TITLE |
|----------|--------------------|
| 111 | Federal Disabled Assistance Fund |
| 117 | Federal Public Welfare Adm. |
| 118 | Federal Public Library Service |
| 127 | Federal Economic Oportunity Fund |
| 131 | Federal Blind Assistance |
| 132 | Federal Children Assistance |
| 134 | Federal Older Americans |
| 135 | Federal Mental Health & Mental Retardation |
| 136 | Denton State School Federal Fund |
| 141 | Federal Adult Blind |
| 148 | Federal Health, Education & Welfare |
| 159 | Federal Medical Assistance Fund |
| 169 | Federal Educational |
| 171 | Federal School Lunch |
| 186 | College Building 1948/1957 |
| 219 | Federal Higher Education Fund |
| 221 | Federal Civil Defense & Disaster Relief |
| 222 | Federal Department Public Safety |

| FUND NO. | FUND NAME OR TITLE |
|----------|--------------------|
| 223 | Land & Water Conservation |
| 224 | Governor's Office Federal Projects |
| 268 | Federal Market News |
| 273 | Federal Health |
| 290 | Federal Drought Relief Fund |
| 300 | College Building 1958/1967 |
| 389 | College Building 1966/1967 |
| 903 | Flood Area School & Road Fund" |

Section 1 of Article 2543d, Vernon's Civil Statutes (as enacted by House Bill 1217 Acts of the 61st Legislature, Regular Session, 1969, Chapter 885, Page 2703) provides:

"Interest received on account of time deposits of moneys in funds and accounts in the charge of the State Treasurer shall be allocated as follows: To each constitutional fund there shall be credited the pro rata portion of the interest received due to such fund. The remainder of the interest received, with the exception of that portion required by other statutes to be credited on a pro rata basis to protested tax payments, shall be credited to the General Revenue Fund. The interest received shall be allocated on a monthly basis."

Each of the funds named in your request is money granted the State by the Federal Government for certain designated purposes with the exception of Fund Nos. 186 - College Building 1948/1957, 300 - College Building 1958/1967, and 389 - College Building 1966/1967.

The three funds mentioned above which do not consist of Federal moneys (Fund Nos. 186, 300, and 389) are funds derived from the provisions of Section 17 of Article 7, Constitution of Texas, providing for a College Building fund.

Therefore, these funds are each constitutional funds within the meaning of Section 1 of Article 2543d, and the interest received on account of time deposits of such funds is to be credited to such funds.

Article 2543d as applied to the other funds states that the interest received on account of time deposits shall be credited to the General Revenue Fund. Therefore, the interest on the Federal funds mentioned in your request is to be credited to the General Revenue Fund unless such action constitutes diversion of the purpose for which the Federal grants were made. Each of the Federal funds mentioned in your request constitutes a special fund granted by the Federal government to be expended for specific purposes and are held by the State in trust for the benefit of the programs being administered. Friedman v. American Surety of New York 137 Tex. 149, 151 S.W.2d 570 (1941). Attorney General's Opinions Nos. V-427 (1947), WW-241 (1957), M-71 (1967), M-266 (1958), V-1250 (1951) and C-530 (1965).

Generally in the event that the corpus of the testamentary trust produces supplementary income for which no provision has been made directing its distribution or accumulation such income will be accumulated and will be distributable as part of the corpus. Stoffles v. Stoffles 18 N.J. Super. 300, 86 A.2d 806 (1952); Tobler v. Moncrief 72 N.J. Super. 48, 178 A.2d 105 (1962). Attorney General's Opinion No. C-610 (1966). Thus it was held in Moore v. Sanders 106 S.W.2d 337 (Tex.Civ.App.,no writ, 1937):

> "The general rule is well settled that, where trust money cannot be applied either immediately or within a short time to the purposes of the trust, it is the duty of the trustee to make the trust productive to the cestui que trust by investment of it in some proper security, and a duty to invest arises by necessary implication from direction to pay over the interest or income."

The same rule applies to interest earned by a deposit of special fund. It was held in Lawson v. Baker, 220 S.W. 260, 272 (Tex.Civ.App. 1920, error ref.):

"...Interest, according to all the authorities, is an accretion to the principal fund earning it, and, unless lawfully separated therefrom, becomes a part thereof. We think it is clear that the interest earned by deposit of special funds is an increment that accrues to such special fund, and any attempt of the Legislature to make such interest a part of the general revenue is futile, in the face of the constitutional provisions creating or dedicating these funds to special purposes." (Emphasis added.)

Therefore, in Attorney General's Opinion C-610, supra, it was stated that income derived from interest on time deposits or short term investments of restricted funds becomes a part of the restricted funds and can be expended only for the purposes for which the restricted funds may be expended, unless specific provision is made for distribution of income. In Attorney General's Opinion C-530 (1965), it was stated:

"The Legislature, recognizing the trust nature of the Federal funds, proceeded to enact House Bill No. 12, Acts of the 59th Legislature, Regular Session, 1965 (the General Appropriations Act for the biennium beginning September 1, 1965 and ending August 31, 1967), which appropriates the Federal funds and stipulates the conditions under which such funds may be expended. Reference is made to Article V, Section 27 of said General Appropriations Act which provides as follows:

"'Sec. 27. FEDERAL FUNDS APPROPRIATED FOR USE. Any funds received by the agencies of the State named in this Act from the United States Government are hereby appropriated to such agencies for the purposes for which the Federal grant, allocation, aid, or payment was made, subject to the provisions of this Act. Within thirty (30) days after the receipt of any such Federal grants, allocations, aid or payments, the amounts thereof and the purposes for which they were made shall be reported to the Governor and the Legislative Budget Board.' (Underscoring added for emphasis.)

"It appears clearly that the United States Government has intended to impose upon the states who accept the Federal funds as trans- feree of the funds equitable duties (or con- ditions) to deal with same for the benefit of the trainees, and the fact that no formal or technical language was used, such as 'trust' or 'trustee', is not controlling. The test of whether a trust was created is whether the Federal government, as settlor, manifested an intention to create the kind of relation- ship which to lawyers is known as a trust. Scott on Trusts, Vol. 1, Section 24, page 147; Bogert, Trusts and Trustees, Vol. 1, Section 45, pages 293, 294; Restatement, Trusts, Vol. 1, Chapter 1, Section 2, page 6.

"A fundamental requisite of a trust is the separation of the legal estate from the equitable estate and the beneficial enjoy- ment. 54 Am.Jur., Trusts, Section 35, at pages 46 and 47; 10 Am.Jur., Charities, Section 4, at page 587.

"We are of the opinion that the Federal government, as settlor, intended to create a trust which would be for a public purpose.

"It is recognized generally that the state or sovereign, as well as public officers, may be a trustee with respect to matters falling within its functions. 90 C.J.S. 133, Trusts, Sec. 204; 81 C.J.S. 1189, 1191, States, Sec. 154.

"In 81 C.J.S. 1146, States, Sec. 132, the general rule is recognized that,

"'With respect to the handling of public funds, the legislature is in a position similar to that of a trustee, and the rule of fidu- ciary law that a trustee shall not be allowed to advantage himself in dealing with trust funds is apposite.'

"The caption of S.B. No. 163 is clear in
'...authorizing the State Department of
Public Welfare to accept and expend any Federal
moneys allocated to the said Department for
any projects or programs established to carry
out the purposes of this Act and for adminis-
trative expenses and/or any other expenses
incident to the administration of said pro-
jects or programs...'

"Section 2 of the Act provides that '...
such funds shall be subject to withdrawals
upon authorization of the Commissioner of
Public Welfare...' Section 3 also repeats
this provision.

"Under the statute no implementing state
funds whatever is required, and the Federal
funds are trust funds which are being held
in custody subject to withdrawal only for the
purposes and administration of the Federal
statute.

"We have heretofore recognized and held
that funds of similar character are to be im-
pressed with a trust when deposited in a special
account with the State Treasurer as custodian,
and so held and expended by state officials.
See Attorney General Opinions WW-565, WW-600,
and W-1321, and authorities cited."'

In Attorney General's Opinion WW-122 (1957), it
was held:

"We pass to a consideration of the proper
depository for the dividend checks. It is clear that
the funds which have been and will be received
from this stock never become 'State funds' in
the sense that they could be placed in the
general revenue fund and appropriated by the
Legislature. The stock dividends are impressed
with a trust and may be expended only for the
purposes stated in the deed of gift. Further-
more, we think it is apparent that it was not

the intention of the settlor that these funds be placed within some special fund in the State Treasury because the State's title to the stock and any revenues therefrom would terminate should the State fail to comply with the condition of the gift. In such event, any revenues then on hand could not revert to the Grantor, her heirs or assigns upon giving notice to the State Parks Board because a legislative appropriation would be necessary to withdraw said revenues from the State Treasury."

In view of the foregoing, we conclude that the Federal funds mentioned in your request constitute special funds held in trust by the state, and that interest derived from said funds becomes a part of the trust funds, and can only be expended for the purposes for which the moneys were granted. Since none of the moneys were granted for the general operation of state government but on the contrary were granted for specific purposes, you are advised that depository interest earned on the special funds should be deposited to the credit of the special funds rather than the General Revenue Fund. The purpose for which federal grants may be expended is governed by the Acts of Congress, and the Legislature cannot authorize such grants to be expended for purposes not included in the grants.

## S U M M A R Y

Depository interest earned on special constitutional funds or federal trust funds created for specific purposes should be deposited to the credit of those specific funds rather than the General Revenue Fund.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice Chairman
Bill Craig
Rick Fisher
John Grace
Thomas Sedberry

MEADE F. GRIFFIN
Staff Legal Assistant

HAWTHORNE PHILLIPS
Executive Assistant

NOLA WHITE
First Assistant